IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| HENDERSON STATE BANK, Plaintiff, | ) ) ) | Case No. 19 - 3070 |
| vs. | ) ) ) | **COMPLAINT** |
| UNIVERSAL HERBS, LLC, Defendant. | ) ) | |

COMES NOW Plaintiff and for its causes of actions against Defendant states:

1. Plaintiff Henderson State Bank ("Henderson") is a bank chartered and organized under the laws of the state of Nebraska with its principal place of business in Henderson, Nebraska.

2. Defendant, Universal Herbs, LLC, is a Colorado limited liability company with its principal place of business in Colorado. Mark Ray ("Ray") is an owner of and has claimed to be sole owner of Defendant.

3. Ray is a manager of Defendant and has held himself out as the chief executive or decision-maker for Defendant.

4. Ray also is, and at all pertinent times hereto was, an owner and manager of MR Cattle Production Services, LLC, a/k/a MR. Cattle Production Services, LLC ("MR Cattle") and Custom Consulting & Product Services, LLC ("Custom"). Ray, MR Cattle and Custom are individually and/or collectively referred herein as the "Cattle Enterprise," although by such reference Henderson does not exclude other individuals and entities from acting with or aiding and abetting the Cattle Enterprise.

5. Ray has held himself out to Henderson and others as sole owner of MR Cattle and of Custom.

6. The Cattle Enterprise, including Custom and MR Cattle at the express direction of Ray, sent millions of dollars through a bank account of a husband and wife that was a Henderson checking account (the "Henderson Account").

7. The husband dealt with the Cattle Enterprise via checks and wire transfers extensively, receiving funds from and sending funds to the Cattle Enterprise. He is hereinafter referred to as the "Customer."

8. The Cattle Enterprise, perhaps among others, defrauded Henderson.

9. Defendant, Ray, MR Cattle, and Custom knew the Cattle Enterprise had overdrawn its checking accounts at JPMorgan Chase Bank, N.A. ("JPMC"), by significantly more than $4,000,000.00 as of October 26, 2018; that hundreds of thousands of dollars of supposed funds of the Cattle Enterprise had been made payable to the Customer; and that a check in the amount of $729,679.09 drawn by MR Cattle Production Services, LLC, dated October 24, 2018, (the "MR Check") had been deposited in the Account and, on information and belief, that Henderson was relying on the MR Check clearing banking channels, that Henderson's conduct in reliance included but not was not limited to issuing a cashier's check payable at least in part to Customer, and that, unknown to Henderson, one or more of some extraordinary checks payable to Customer had been subjected to a stop payment request by the time of issuance of said cashier's check.

10. The aforesaid cashier's check was in fact issued by Henderson payable to the order of a payee(s) specified in a vertical format with the name of Customer and his wife stacked on top of each in the payee area of the cashier's check.

11. Said cashier's check was dated October 26, 2018, and was in an amount exceeding $1,440,000.00.

12. Before October 26, 2018, Custom was, during August, September and October, 2018, on numerous occasions, receiving wire transfers and deposit items and sending wire transfers and/or writing checks in amounts and with timing that are not consistent with the fund flow being for actual cattle brokering, cattle fattening, or ranching business and are an indicator of fraud or similar unlawful conduct by the Cattle Enterprise.

13. MR Cattle had at least one checking account with JPMC. Throughout much of October, 2018, MR Cattle engaged in numerous wire transfer and check deposit and issuance transactions with affiliates of Ray, including but not limited to Custom. MR Cattle fund flow includes writing checks in amounts and with timing that are not consistent with the fund flow being for actual cattle brokering, cattle fattening, or ranching business and are an indicator of fraud or similar unlawful conduct by the Cattle Enterprise.

14. Ray Custom, and MR Cattle, perhaps among others, engaged in check kiting. They participated in a plan by Ray, perhaps among others, to write checks on one or more JPMC accounts of the Cattle Enterprise without sufficient cleared funds existing in the accounts at the time the checks were written. They also participated in a plan by Ray to transmit and receive pre-signed checks that were, on information and belief, blank as to dollar amount and in the memo line and were then completed by someone other than the individual signing the checks. On information and belief, this was done, at least in part, because Ray knew one or more Cattle Enterprise accounts

needed to have an ability to infuse uncleared funds rapidly and that waiting for the arrival of conventional checks would jeopardize the check kite.

15. Universal is tied to the Cattle Enterprise.

16. On information and belief, Ray has used assets of Universal to seek credit for the Cattle Enterprise.

17. On information and belief:

A. Universal's medical director or an associated physician during significant times in 2018 for Universal medical marijuana operations was the husband of a Ray-affiliated individual who, through cattle-related entities, engaged with the Cattle Enterprise and received funds from the Cattle Enterprise during the check kite, sent funds to the Cattle Enterprise during and in furtherance of the check kite, and also jointly owned with Ray a farm/ranch limited liability company or sold the company to Ray.

B. A man holding himself out as having financial expertise in the marijuana and cattle industries and residing in Georgia advised Universal and Ray, including pertaining to cattle and marijuana operations. The Georgian's counsel has stated an intention to invoke or has invoked on behalf of the Georgian the Fifth Amendment and thus refuses to date to produce documents to Henderson. The Georgian also sent at least one, and apparently a significant number, of supposed cattle inventory sheets used to allegedly justify a reason for incoming funds to the Cattle Enterprise during the check kite, as the Cattle Enterprise would purport to find cattle, describe them on an inventory, receive funds for the cattle, and then deposit those funds into one or more JPMC accounts.

C. Ray allegedly withdrew at least $25,000 per month from Universal and used much of it in the Cattle Enterprise. After Henderson alleged to Ray in 2019 that Ray was liable to Henderson for loss arising from Ray's handling of the JPMC checking accounts and the fund flow, Ray held himself out as continuing to receive at least $26,000 per month from Universal.

D. Ray withdrew much or all of the periodic amounts from Universal in 2018 in the form of cash rather than checking account transfers or money orders or the like. Ray did this, at least in part, to decrease the amount of bank documentation that would exist to track Universal cash.

E. Without Universal's conduct, the check kite would not have lasted as long as it did and/or Henderson would have pursued Ray more quickly for a remedy to Henderson's damages, and thus Universal's conduct contributed to Henderson's damages.

F. MR Cattle, Custom and Ray, concerning at least those information requests and Ray's payment obligations to Henderson, have received legal counsel from the same law firm as Universal uses as a legal counsel.

COUNT I: Direct participation in or aiding and abetting fraud

18. All allegations of this Complaint are incorporated herein by this reference.

19. Universal aided and abetted the Cattle Enterprise (perhaps with others) in defrauding Henderson.

20. Universal substantially encouraged the Cattle Enterprise to continue a check kite, to the detriment of Henderson.

21. On information and belief, Universal at the time of its participation in or aiding and abetting the fraud knew that the Cattle Enterprise was involved in unlawful conduct. Ray knew and Ray was a manager and member of Universal.

22. The check kite and/or related fraud aided by Universal substantially damaged, directly, proximately and naturally Henderson. Henderson's damages exceed $1,000,000 by Henderson's calculations and are increasing.

23. Henderson's damages include but are not limited to Henderson's attorney fees and other legal expense of dealing with third parties whose conduct has required Henderson to retain legal counsel and incur legal expense and whose conduct arises out of or due to fraud described in this Complaint.

WHEREFORE, Henderson respectfully requests entry of a judgment against Universal and in favor of Henderson for Henderson's damages (including but not necessarily limited to overdrawn amounts on the Account, Henderson's attorney fees of dealing with the Customer after the Customer's default in obligations owed to Henderson, and Henderson's attorney fees of dealing with one or more legal persons involved in the fund flow and handling of the cashier's check), prejudgment and postjudgment interest to the extent allowed by law, and Henderson's accrued and accruing costs.

COUNT II: Civil conspiracy to engage in torts damaging Henderson

24. All allegations in this Complaint are incorporated in this Count by this reference.

25. Universal agreed with Ray, MR Cattle, and Custom, perhaps among others, to participate in conduct that tortiously damaged Henderson. For example and

without limiting the generality of the foregoing: Universal agreed to engage in conduct assisting the check kite; and assisting Ray in causing various checks and deposits to occur that interfered with Henderson's rights under Customer's deposit account agreement with Henderson for the Account.

26. Universal undertook at least one overt act participating in the conspiratorial agreement.

27. The interference with Henderson's rights under the Account agreement was unjustified.

28. The interference with Henderson's rights under the Account agreement directly, proximately and naturally damaged Henderson.

29. Henderson does not herein alleged Customer's participation in or lack of participation in any tortious conduct or interference, but, on information and belief, Universal participated in such fraud and interference and agreed with the Cattle Enterprise to significant conduct in furtherance of the tortious conduct and interference.

WHEREFORE, Henderson respectfully requests entry of a judgment against Universal and in favor of Henderson for Henderson's damages (including but not necessarily limited to overdrawn amounts on the Account, Henderson's attorney fees of dealing with the Customer after the Customer's default in obligations owed to Henderson, and Henderson's attorney fees of dealing with one or more legal persons involved in the fund flow and handling of the cashier's check), prejudgment and postjudgment interest to the extent allowed by law, and Henderson's accrued and accruing costs.

DATED: July 10, 2019.

HENDERSON STATE BANK, Plaintiff

By: /s/ Thomas O. Ashby

of   Thomas O. Ashby (NE# 17610)
BAIRD HOLM LLP
1700 Farnam Street
Suite 1500
Omaha, NE 68102-2068
Phone: 402-344-0500
tashby@bairdholm.com
Its attorneys

DOCS/2295912